OPINION OF THE COURT
Howard A. Zeller, J.
Petitioner John Larkin moves pursuant to CPLR articles 75 and 78 for various relief regarding the award of a no-fault arbitrator. Respondent Insurance Company of North America (INA) cross-moves to dismiss the petition pursuant to CPLR 404 and 3211 or, in the alternative, to stay this proceeding pursuant to CPLR 2201.
This proceeding arises out of a dispute over the amount of lost wages that is recoverable by a claimant under no-fault. Section 671 (subd 1, par [b]) of the Insurance Law provides that “[b]asic economic loss” recoverable under no-fault includes loss of earnings up to $1,000 per month; paragraph (a) of subdivision 2 provides that first-party *945 benefits include basic economic loss payments less 20% of lost earnings. In Kurcsics v Merchants Mut. Ins. Co. (49 NY2d 451, 457) the Court of Appeals considered “whether the 20% deduction was intended to operate so as to limit recovery for loss of earnings to $800 per month, or whether it was meant to reduce only actual lost earnings claimed, thereby allowing a maximum recovery of $1,000 per month as first-party benefits.” The court concluded (p 458) “that an injured person can recover up to $1,000 per month from the insurance carrier for lost earnings. The statutory scheme envisions nothing less”. The court did not state whether this rule was to be applied retroactively.
The Superintendent of Insurance on May 1, 1980 promulgated the “Fourteenth Amendment to Regulation No. 68”. Inter alia, this amendment provided that for no-fault cases regarding accidents which occurred prior to February 20, 1980 (the date Kurcsics, supra, was decided), arbitrators shall calculate the amount due a claimant using the $800 per month loss of earnings ceiling and insurers shall be liable therefor. Arbitrators shall also calculate loss of earnings using the $1,000 per month ceiling. However, this latter calculation is not a final award. “Pending a further regulation or other directive by the superintendent based on a final court determination of insurers’ and self-insurers’ obligations on accidents arising prior to February 20, 1980, arbitrators and master arbitrators shall have no jurisdiction to make an award for amounts in excess of $800 per month or interest and/or attorney’s fees with respect thereto or to direct that insurers or self-insurers pay any such amounts.” (11 NYCRR 65.18 [b] [2] [ii].)
In a “Statement of Reasons for Emergency Measure”, the superintendent claimed that “no arbitrator or master arbitrator should be put in the position of having to decide with finality an insurer’s or self-insurer’s liability for benefits in excess of $800.00 per month for accidents prior to February 20, 1980. Such arbitration awards would be final and, if inconsistent with an ultimate court determination, this could result in irreparable harm to claimants, insurers or self-insurers depending on the particular arbitrator’s or master arbitrator’s interpretation of the scope of Kurcsics.”
*946 Petitioner alleges he was injured as a result of a motor vehicle accident on October 28, 1978, has been unable to work since then, and has sustained a loss of earnings of $1,491 per month. Respondent Insurance Company of North America paid petitioner $800 per month in lost earnings, while petitioner demanded $1,000 per month. An arbitrator decided whether “$1000 should have been paid to claimant from October 28, 1978 to February 27, 1980 instead of the $800 which was paid,” and found that “(a) law passed by the State Legislature is effective from date it says it is and not when an administrative agency says it is unless this power is specifically given to it by the Statute.” Petitioner was awarded $3,200 plus interest and attorney’s fees, as the arbitrator implicitly found that the $1,000 loss of earnings ceiling was proper, and disregarded the Fourteenth Amendment.
Petitioner alleges that by reason of the arbitrator’s decision the arbitrator was removed from the American Arbitration Association’s panel. Petitioner seeks an order staying the consideration of this matter by a master arbitrator, confirming the original arbitrator’s award, in the alternative declaring amendment 14 invalid, directing that if master arbitration proceeds that the master arbitrator not consider the amendment, and prohibiting the superintendent from “any retaliatory action or threat of action, past or future, against any arbitrator or other person for failure to comply with said invalid and illegally promulgated T4th Amendment’.”
Respondent INA claims that petitioner lacks standing to contest the validity of the Fourteenth Amendment. “Whether a person seeking relief is a proper party to request an adjudication is an aspect of justiciability which must be considered at the outset of any litigation. Under traditional theory a party had standing only where he established that his legal rights had been invaded * * * This approach, known as the legal interest’ test has recently been disavowed because it focuses on the issues to be litigated rather than on the party bringing suit * * * The ‘zone of interest’ test was formulated to ascertain the petitioner’s status without necessarily dealing with the merits of the litigation. A petitioner need only show that *947 the administrative action will in fact have a harmful effect on the petitioner and that the interest asserted is arguably within the zone of interest to be protected by the statute” (Matter of Dairylea Co-op. v Walkley, 38 NY2d 6, 9).
IN A argues that petitioner lacks standing because the amendment has not been applied to him, its application by a master arbitrator is not assured, and petitioner has suffered no injury. It is true that the Fourteenth Amendment has not caused petitioner a present injury in fact. However, the April, 1981 issue of “New York Arbitration Reports” states that 19 arbitrators were removed from Office for failure to implement 11 NYCRR 65.18, and contains a notice from the superintendent that disregard of any regulations by an arbitrator will result in removal. INA argues nonetheless that the application of 11 NYCRR 65.18 by a master arbitrator is speculative. In light of the superintendent’s actions and warning this argument is strained. Petitioner has shown that the Fourteenth Amendment will have a harmful effect on him and he asserts an interest in arbitration that is within the zone of interest of the Insurance Law and CPLR. It would be a poor utilization of judicial resources to deny standing and have master arbitration proceed, only to have these same ultimate issues before the court again on appeal from the master arbitrator. Petitioner has standing.
A dismissal of the entire petition on the ground it is premature is similarly not warranted. This dispute surrounds a temporary measure which will expire of its own terms, and a dismissal would only prolong the resolution of issues which deserve a more expeditious treatment. The interests of the parties and judicial economy require that the court address the petition.
Petitioner’s motion to stay the appeal to a master arbitrator is made pursuant to CPLR 7503. CPLR 7503 (subd [b]) provides, in part, “a party who has not *** made or been served with an application to compel arbitration, may apply to stay arbitration on the ground that a valid agreement was not made or has not been complied with”. The superintendent argues petitioner has participated in the arbitration process and has lost his right to a stay pursuant to CPLR 7503 (subd [b]). In asking for a stay petitioner is *948 not seeking to permanently stay the arbitration process, only attempting to avoid the consequences of Amendment 14. Petitioner fears — and with ample reason —. that the appeal to a master arbitrator will not result, at this time, in a final determination on the merits.
This court has inherent power to stay further arbitration proceedings pending the decision by the Court of Appeals on the retroactivity issue. The “ ‘Supreme Court is a court of original, unlimited and unqualified jurisdiction *** competent to entertain all causes of action unless its jurisdiction has been specifically proscribed’ ” (Lacks v Lacks, 41 NY2d 71, 75, citing Kagen v Kagen, 21 NY2d 532; see NY Const. art VI, §7). Pursuant to this broad grant of jurisdiction the court has the “inherent power *** to stay proceedings or control the trial of an action” (Belasco Co. v Klaw, 98 App Div 74, 75). This power was given statutory form in 1920 with the enactment of section 167 of the Civil Practice Act, and then CPLR 2201 and numerous other provisions for particular kinds of stays (2A Weinstein-Korn-Miller, NY Civ Prac, par 2201.01; see CPLR 1006, subd [c] [interpleader]; 326, subd [a] [suspension of proceedings pending removal of an action]). A stay should be granted.
Petitioner’s motion to confirm the award pursuant to CPLR 7510 should not be considered because an appeal before the master arbitrator is pending.
Petitioner argues in the alternative that the Fourteenth Amendment is invalid and was promulgated in excess of the superintendent’s authority. Section 10 of the Insurance Law provides in part that the superintendent has the “rights, powers, and duties as expressed or reasonably implied by this chapter, in connection with the business of insurance in this state.” Section 21 grants him the power to prescribe regulations
“(a) governing the duties assigned to the members of the staff of the insurance department;
“(b) effectuating any power, given to him under the provisions of this chapter, to prescribe forms or otherwise to make regulations;
“(c) interpreting the provisions of this chapter;
*949 “(d) governing the procedure to be followed in the practice of the insurance department.”
Subdivision 2 of section 675 of the Insurance Law gives claimants the option of submitting disputes over payment of first-party benefits to arbitration “pursuant to [simplified] procedures to be promulgated or approved by the superintendent.” Petitioner argues that the Fourteenth Amendment is not within any of these categories: “It is not a regulation dealing with the duties, function or operation of the insurance department, it is not an interpretation of the insurance law, it does not prescribe forms, and, most iiñportantly, it does not effectuate the power given to the superintendent by § 675 of the Insurance Law to promulgate simplified procedures.”
The superintendent’s powers are broader than the letter of section 21 and subdivision 2 of section 675 of the Insurance Law, however. Section 10 gives him whatever powers may be “reasonably implied” from the statute. His authority was amplified further in Ostrer v Schenck (41 NY2d 782, 785-786):
“The courts have consistently recognized that these provisions vest the superintendent ‘with broad power to interpret, clarify, and implement the legislative policy’. (Breen v Cunard Lines S. S. Co., 33 NY2d 508, 511.) Provided that his regulations are not inconsistent with some specific statutory provision, the superintendent may prescribe regulations ‘to effectuate any of the powers given to him by law’ (Matter of B. & R. Excess Corp. v Thacher, 37 Misc 2d 307, 309, affd 18 AD2d 1137), including any powers that the statute reasonably implies.
“The function of a reviewing court is a limited one. The challenger of a regulation must establish that the regulation ‘is so lacking in reason for its promulgation that it is essentially arbitrary.’ (Matter of Marburg v Cole, 286 NY 202, 212.) The interpretation given a statute by the administering agency ‘if not irrational or unreasonable, should be upheld.’ (Matter of Howard v Wyman, 28 NY2d 434, 438.) As was observed in Mississippi Val. Barge Co. v United States (292 US 282, 286-287), ‘[t]he judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.’ ”
*950 The superintendent has been granted an explicit power to establish simplified no-fault arbitration procedures, and all powers which are reasonably implied to accomplish that job. If the superintendent had done nothing after Kurcsics (49 NY2d 451, supra) was handed down, the retroactivity of that case would have been subject to decision by numerous arbitrators with the possibility of skewed results and the certainty of unsettled law pending resolution by the Court of Appeals. The superintendent deferred piecemeal arbitral considerations of Kurcsics’ retroactivity to a definitive judicial one. The court’s role is not to determine whether this was the best reaction to Kurcsics, merely whether it was a rational one, reasonably implied by the powers vested in the superintendent. Viewed in this light the Fourteenth Amendment, as an emergency measure, was a proper exercise of the superintendent’s discretion.
Petitioner argues, however, that the Fourteenth Amendment forces claimants to wait indefinitely until the Court of Appeals rules on Kurcsics’ retroactivity, and that in the meantime the basic virtue of arbitration, its speed, will be lost. However, a quick award can still be had of any amount up to $800 in lost wages, and only an award in excess of that amount has been temporarily frozen. Further, any final arbitration award in excess of $800 a month would hardly be definitive while the issue is pending before the Court of Appeals: The speed of arbitration would be gained only at the expense of certainty, and it cannot be said that the superintendent’s decision to enforce a delay, with its attendant certainty and orderliness, was irrational.
Petitioner’s motion for an order prohibiting the superintendent from retaliating against an arbitrator who fails to comply with the Fourteenth Amendment is far beyond the scope of any dispute between the parties directly before the court. Nor may this proceeding be utilized to review the punishment of dismissal visited upon the arbitrator by the Superintendent of Insurance.
Gurnee v Aetna Life & Cas. Co. (104 Misc 2d 840, affd 79 AD2d 860) and Weinreich v State-Wide Ins. Co. (NYLJ, Aug. 13, 1980, p 7, col 3, affd 80 AD2d 756) are now before the Court of Appeals. Both raise the question whether *951 Kurcsics (supra) should be applied retroactively. A Court of Appeals decision will lay the issue at rest. Amendment 14 is an “Emergency Measure” and should have no effect once the Court of Appeals has décided the retroactivity issue. The “emergency” shall by then cease to exist.
The petition is granted to the extent of staying respondents from taking or continuing any steps or proceedings in the matter of the master arbitration between petitioner John Larkin and respondent Insurance Company of North America until the further order of this court. Any party may apply to have the stay vacated after the Court of Appeals decides Gurnee v Aetna Life & Cas. Co. (supra) and/or Weinreich v State-Wide Ins. Co. (supra).
The cross motion of respondent Insurance Company of North America to dismiss this proceeding is dismissed.
No costs are awarded.